NOT FOR PUBLICATION                                          [Docket No. 55]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
ROGER E. ROSS,                      :   Civil No. 07-2693(RMB)
                                    :
         Plaintiff,                 :
                                    :
    v.                              :   **OPINION**
                                    :
JASON MARIO MONGE, DMD, et al.,     :
                                    :
         Defendants.                :
_____ :


William M. Tambussi
Michael Joseph Dipiero
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108

    Attorneys for Plaintiff

Sean X. Kelly
Marks, O'Neill, O'Brien & Courtney, PC
Cooper River West
6981 N. Park Drive, Suite 300
Pennsauken, NJ 08110

    Attorney for Defendants Monge, Vaynberg, Manmuyac, Sabetta,
    and Correctional Medical Services, Inc.

**BUMB**, UNITED STATES DISTRICT JUDGE:

   This matter comes before the COURT upon a motion to dismiss

for failure to state a claim upon which relief may be granted,

pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the

alternative for summary judgment, pursuant to Federal Rule of

1

Civil Procedure 56(a).  The motion, brought by defendants Correctional Medical Services, Inc. ("CMS"); Jason Mario Monge, D.M.D.; Inna Vaynberg, P.A.; Evelyn Mamuyac, R.N.; and Teresa Sabetta, R.N. (collectively, the "Defendants"), contends that the complaint does not allege facts sufficient to establish liability.  For the reasons stated herein, the COURT denies the motion.

## Background Facts

All of the relevant facts are drawn from the Second Amended Complaint, [Docket No. 38], and the COURT assumes the truth of the facts alleged therein for purposes of this motion.

Plaintiff is currently incarcerated at Riverfront State Prison in Camden, New Jersey.  (2d Amd. Compl. ¶ 18.)  While incarcerated, Plaintiff developed a dental problem requiring a tooth-extraction procedure, which was performed on March 3, 2005 by Defendant Sharon Simpkins, D.D.S.  (Id. at ¶ 19.) Complications from the procedure followed.  Defendant Maurice Rosman, D.O., examined Plaintiff, and although he noted necrotic tissue and blood coming from the site of the extracted tooth, he prescribed only Motrin and Amoxicillin without any follow-up. (Id. at ¶ 21.)  On February 27, 2006, as a result of ongoing complications, Plaintiff was again examined, this time by Defendant Jason M. Monge, D.M.D., who performed a biopsy and removed a benign nodule at the tooth-extraction site.  (Id. at ¶¶

22-23.)  As a result of complications from that procedure, Plaintiff developed an epidural cranial abscess, as well as chronic headaches, fevers, and nausea.  (Id. at ¶¶ 24-27.)  On November 27, 2006, Plaintiff was treated for these symptoms by Defendant Inna Vaynberg, P.A., who prescribed a medication containing Ibuprofen, Acetaminophen, and caffeine.  (Id. at ¶ 28.)  Plaintiff sought additional help from Defendant Evelyn Manmuyac, a nurse, on December 6, 2006, who advised him to see a physician's assistant during office hours.  (Id. at ¶ 29.)  In the following two days, Plaintiff was again examined by Defendant Roseman, who ordered a variety of tests, and by Defendant Francis J. Seiber, O.D., who determined that there were no abnormalities regarding Plaintiff's eyes or vision.  (Id. at ¶¶ 30-31.)  On December 9, 12, and 16, 2006, Plaintiff sought treatment for his continuing symptoms; he was again prescribed various pain-killers and, on December 12, additional tests were ordered.  (Id. at ¶¶ 32-34.)

   Plaintiff lost consciousness on December 17, 2006, as a result of which he was transferred to St. Francis Medical Center for treatment.  (Id. at ¶ 35.)  Doctors there determined that Plaintiff was "suffering from an epidural abscess, which was putting pressure on his brain."  (Id. at ¶ 36.)  The following day, they performed an emergency craniotomy, but could not fully repair Plaintiff's skull.  (Id. at ¶ 37.)  Once returned to

Riverfront Prison on December 26, 2006, Plaintiff experienced ongoing neurological dysfunction, but in spite of this, Plaintiff avers, "CMS medical staff took no steps to protect Plaintiff from brain injury for over a year and half." (Id. at ¶¶ 39-41.) Plaintiff finally underwent cranioplasty surgery on May 20, 2008 at St. Francis Medical Center to complete the repairs to Plaintiff's skull begun a year-and-a-half earlier. (Id. at ¶ 51.) In that intervening period, Plaintiff underwent a number of procedures to close his oral antral communication. (Id. at ¶¶ 42-47.)

Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his federal and state civil rights, as well as various state-law torts. Defendants now move for dismissal for failure to state a legally cognizable claim, or alternatively, for summary judgment.

## Legal Standard

Defendants have styled the motion herein considered as a motion to dismiss for failure to state a claim, or alternatively, for summary judgment. However, the distinguishing characteristic of a motion for summary judgment is the presence of "extrinsic evidence," that is, evidence other than the pleadings, matters attached to the pleadings, matters incorporated by reference into the pleadings, matters of public record, and other matters integral to plaintiff's claim. In re Bayside Prison Litigation,

4

190 F. Supp. 2d 755, 760 (D.N.J. 2002).  Here, no such extrinsic evidence has been presented or relied upon by the litigants.[1]  Thus, the COURT will decide the motion as a Rule 12(b)(6) motion to dismiss, not a summary judgment motion.

In deciding a Rule 12(b)(6) motion to dismiss, courts should look to the face of the complaint and decide whether, taking all the allegations of fact as true and construing them in a light most favorable to the nonmovant, the plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The motion to dismiss must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)."  Id. at 1965 (internal citations omitted).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal

---

[1] The only exhibit presented to the COURT is an excerpt from the Riverfront State Prison Handbook describing the procedure for prisoner requests and complaints.  As the Second Amended Complaint avers exhaustion of administrative remedies, (2d Amd. Compl. ¶ 61), this document is integral to the complaint, and is thus not extrinsic evidence for summary judgment purposes.  In re Bayside, 190 F. Supp. 2d at 762.

citations omitted). Courts must accept any and all reasonable inferences derived from the alleged facts, Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991), and must view all allegations in the complaint in the light most favorable to the plaintiff, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## Discussion

1. Exhaustion of Administrative Remedies

Defendants' first asserted basis for dismissal is that Plaintiff's claims are barred since he failed to properly exhaust administrative remedies, as required by title 42 of the United States Code, section 1997e(a). That provision states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this Title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as area available are exhausted.

42 U.S.C. 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 88 (2006) (holding that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules").

Failure to exhaust administrative remedies is an affirmative defense, analogous to a claim that relief is barred by the applicable statute of limitations. Jones v. Bock, 549 U.S. 199, 215 (2007). Of course, a defendant may assert this defense at

the pleading stage though the procedural mechanism of a Rule 12(b)(6) motion to dismiss, see, e.g., Boyd v. Sherrer, No. 06-1013, 2007 WL 2261553, *2-3 (D.N.J. Aug. 3, 2007), but, as with any affirmative defense, the burden lies with party asserting it. Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP, 297 Fed. Appx. 192, 193 (3d Cir. 2008) ("Exhaustion is an affirmative defense and, accordingly, the burden is on [the defendant] to demonstrate that [the plaintiff] failed to exhaust her administrative remedies . . . ."); see also Jones, 549 U.S. at 211-212, 215 (rejecting the Sixth Circuit's approach, which "place[d] the burden of pleading exhaustion in a case covered by the PLRA on the prisoner"); Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face." (citations omitted)).  To put it another way, a prisoner-plaintiff need not plead exhaustion in the complaint, but if he has clearly not exhausted his administrative remedies, a defendant may establish that fact on a motion to dismiss.

Here, Defendants have not established this affirmative defense.  Defendants' brief criticizes Plaintiff for failing to plead exhaustion, but Defendants provide the COURT with no information suggesting that Plaintiff, in fact, failed to exhaust

7

administrative remedies.[2]  (Def.'s Br. 8.)  Indeed, Plaintiff's brief avers that he did exhaust administrative remedies, which he will establish through discovery.  (Pl.'s Br. 13.)  Without more information, Plaintiff cannot prevail on the basis of this affirmative defense.[3]

2. Liability for a "Custom or Policy"

To sustain a § 1983 claim against a corporate entity such as Defendant CMS, a plaintiff "must provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation . . . allege[d]."  Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citing Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)).  Absent such a "policy or custom", a corporate defendant is not vicariously liable under § 1983 for the actions of its employees.  Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978); Natale, 318 F.3d at 583-84.  The Third Circuit has identified three situations where official acts are deemed to be the result of a government custom or policy: first, where the act complained of implements a stated,

---

[2] Plaintiff provides the COURT only with the prison's policies for inmate requests and complaints.  (Inmate Request Procedures [Docket No. 55, Ex. A].)  The COURT has no information, however, as to whether Plaintiff actually followed the prescribed procedures.

[3] Of course, if discovery proves that Plaintiff did not in fact exhaust his administrative remedies, Defendants are free to move for summary judgment on this basis.

8

generally applicable rule; second, where the policymaker has itself acted unlawfully; and third, where the policymaker has failed to act in the face of an obviously inadequate existing practice.  Natale, 318 F.3d at 584.  The COURT therefore turns to the Second Amended Complaint to see if it alleges facts supporting a reasonable inference that a custom or policy caused the asserted constitutional violation.

The COURT finds that it does.  As summarized above, see Background Facts, supra, at 2-4, the Second Amended Complaint describes in exhaustive detail the large number of medical professionals from whom Plaintiff sought care for his ongoing and worsening condition.  (2d. Amd. Compl. ¶¶ 19-51.)  By the COURT's count, between March 3, 2005 and December 17, 2006 (when Plaintiff was ultimately transferred to St. Francis Medical Center after losing consciousness), Plaintiff sought care from at least eight different medical professionals on at least 12 separate occasions, seven of which occurred within the month preceding the December 17 incident.  (Id. at ¶¶ 19-34.)  In each of these encounters, the medical professionals apparently failed to appreciate the seriousness of Plaintiff's condition.  (Id.)  Then, between December 26, 2006 and May 20, 2008, Plaintiff avers that, despite numerous requests for care, the prison's medical professionals again delayed his treatment and failed to take precautions to avert further injury and complications.  (Id. at

9

¶¶ 39-51.)

Based upon these facts, Plaintiff avers that "CMS has no policy or procedure in place to safeguard inmates with this type of serious life threatening health condition." (Id. at 53.) This conclusion is a reasonable inference from the sheer number of medical professionals who, despite providing care to Plaintiff, failed to appreciate and act upon the seriousness of his condition. At a minimum, the COURT can reasonably infer from the facts alleged that CMS policymakers "failed to act affirmatively . . . though the need to take some action . . . [was] obvious, and the inadequacy of existing practice [was] likely to result in the violation of constitutional rights . . . ." Natale, 318 F.3d at 584 (internal citations omitted). In other words, by failing to establish a policy or procedure to safeguard inmates in Plaintiff's position, "the policymaker can reasonably be said to have been deliberately indifferent to the [inmates' medical] need[s]." Id. (internal citations omitted).

3. Eighth Amendment "Deliberate Indifference"

Defendants next aver that the Second Amended Complaint does not establish their "deliberate indifference," which is a necessary element of an Eighth Amendment claim.[4] The COURT ruled

---

[4] Defendants also challenge Plaintiff's New Jersey state constitutional claims. (Def.'s Br. 20.) As the relevant legal considerations are identical to the federal claims, State v. Ramseur, 106 N.J. 123, 167-68, 524 A.2d 188 (1987), the COURT's analysis applies equally to both sets of claims.

10

on this issue as to Defendant Monge in its February 28, 2008 OPINION AND ORDER. [Docket No. 18.] Defendants have not presented any new information or argumentation that would cause the COURT to reconsider its ruling, the rationale of which is equally applicable to all Defendants. The COURT stated:

> Plaintiff . . . alleges that all personnel at Riverfront (including Defendant Monge) were "continually put on notice" of the damage done to him and did nothing. Complt. at p. 4, ¶ (a). At this stage, the Defendant's alleged inaction in not seriously considering Plaintiff's complaints sufficiently states a claim for deliberate indifference to Plaintiff's medical needs. Although discovery in this case may reveal that Plaintiff's claim is a negligence "claim" only, his constitutional claim, as alleged, sufficiently states a claim.

(Op. at 5.) Defendants now fault Plaintiff for failing to plead legal conclusions in the Second Amended Complaint and for bringing an Eighth Amendment claim based upon his "subjective[] disagree[ment] with the course of treatment." (Pl.'s Br. 14-15.) Of course, a plaintiff need not plead legal conclusions in his complaint; he is entitled to all reasonable inferences that may be derived from the facts alleged, Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991), which are viewed in the light most favorable to him, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Furthermore, Plaintiff is entitled to the reasonable inference that, in light of his repeated and persistent requests for care, his complaint with the course of treatment he received is substantially more serious than mere subjective disagreement.

11

Plaintiff has pled ample facts to implicate Defendants Monge, Rosman, Vaynber, Sabetta, and Manmuyak in a scheme of deliberate indifference toward his condition.  Each of these defendants, on separate occasions, provided care for Plaintiff, failing to recognize the seriousness of his condition and/or delaying his treatment.  At the pleading stage, the COURT need not consider the circumstances actually confronted by each individual defendant (which will presumably be revealed in discovery), because, based upon the allegations in the Second Amended Complaint, Plaintiff is entitled to the reasonable inference that the various Plaintiffs knew or should have known about his worsening condition and repeated requests for care.[5]  Accordingly, the Second Amended Complaint states a legally cognizable Eighth Amendment claim against each of the Defendants.

4. <u>Punitive Damages</u>

Defendants next argue that Plaintiff cannot substantiate a claim for punitive damages because Defendants' conduct was not malicious, willful, or in wonton disregard of Plaintiff's rights.

---

[5] Notably, most of the cases cited by Defendants were decided on summary judgment, rather than a motion to dismiss. <u>See, e.g.</u>, <u>Baez v. Stine</u>, 2007 WL 2225843, *7 (M.D. Pa. July 31, 2007) (deciding the summary judgment motion "based upon the well-documented course of treatment set forth in the record"); <u>Adegbuji v. Abode</u>, No. 03-4537, 2005 WL 3536073 (D.N.J. Dec. 22, 2005) (same); <u>Unterberg v. Correctional Medical Systems, Inc.</u>, 799 F. Supp. 490 (E.D. Pa. 1992) (same).  Here, by contrast, the COURT considers only the averments contained in the Second Amended Complaint, and all reasonable inferences drawn therefrom.

The COURT has already found that the Second Amended Complaint is sufficient to reasonably infer Defendants' "deliberate indifference" to Plaintiff's condition. For the same reasons, the COURT finds that one may reasonably infer a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences," which is the requisite condition for punitive damages. Berg v. Reaction Motors Div., 37 N.J. 396, 414, 181 A.2d 487 (1962). The COURT hastens to note, however, that discovery may reveal no basis for punitive damages, in which case Defendants are free to raise this matter at a later stage in the litigation.

5. Negligence

Defendants also contend that Plaintiff's negligence claims must fail, because they owed Plaintiff no duty of care. This position is plainly contradicted by the well established principle that medical professionals owe a duty of care to their patients. See Schueler v. Strelinger, 43 N.J. 330, 344, 204 A.2d 577 (1964) ("When [a medical professional] takes a case it imposes upon him the duty to exercise in the treatment of his patient the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in his field. Failure to have and to use such skill and care toward the patient as a result of which injury or damage results constitutes

negligence."); Dan B. Dobbs, 1 The Law of Torts 631 (2001) ("[P]rofessional persons such as medical doctors . . . traditionally stand in a special relationship to their patients . . . based upon the professional's implicit undertaking or commitment to provide professional services that at least met the standard of care of other professional in that same field." (citing Restatement (Second) of Torts § 299A)).[6]

Defendants maintain, however, that Plaintiff's "emotional distress" was not a reasonably foreseeable consequence of their misconduct.  See Jablonowska v. Suther, 195 N.J. 91, 101, 948 A.2d 610 (2008) ("Foreseeability was initially, and has remained, the touchstone for liability for negligently causing emotional injury to another.").  Of course, emotional distress commonly accompanies serious physical injury.  See Dobbs, supra, at 822 (discussing "parasitic damages").  Thus, to the extent serious physical injury was a reasonably foreseeable consequence of Defendants' alleged misconduct, so too was Plaintiff's emotional distress.  See Evers v. Dollinger, 95 N.J. 399, 410-414, 471 A.2d 405 (1984) (holding that where doctor's negligence proximately caused patient's physical injuries, accompanying emotional distress is compensable).  Accordingly, the COURT will allow

---

[6] It is now well established that nurses, too, have a duty of care to patients.  Dobbs, supra, at 632 n.11; see also, e.g., Adams v. Cooper Hosp., 295 N.J. Super. 5, 8-9, 684 A.2d 506 (1996).

Plaintiff's claim for the emotional distress resulting from Defendants' allegedly negligent conduct to stand.

6. <u>New Jersey Tort Claims Act "Notice of Claim" Requirement</u>

The doctrine of sovereign immunity renders state governments immune from suit for damages, unless the state has waived its immunity. <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."); <u>Alden v. Maine</u>, 527 U.S. 706, 754 (1999) ("[W]e hold that the States retain immunity from private suit in their own courts . . . ."). The State of New Jersey, through the New Jersey Tort Claims Act, has enacted a qualified waiver of its sovereign immunity. <u>Allen v. Fauver</u>, 327 N.J. Super. 14, 18-19, 742 A.2d 594 (1999).[7] One qualification of this waiver is the requirement that parties must, before bringing a tort-claim against a public entity, file prior notice with the public entity within 90 days of the claim's accrual. N.J.S.A. § 59:8-8. Generally, a tort-claim is barred where no notice was filed. <u>Id.</u>

Defendant CMS contends that because it was performing a government function in providing medical care to Plaintiff, it was entitled to notice under the Tort Claims Act for Plaintiff's

---

[7] <u>See also</u> N.J.S.A. § 59:1-2 ("[Because of] the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity . . . , public entities shall only be liable for their negligence within the limitations of this Act . . . .").

claims.  See N.J.S.A. § 59:1-3 cmt (indicating that the definition of "Public Entity" was intended to include "all entities exercising governmental functions.").  Accordingly, Defendant CMS argues, because it received no such notice, Plaintiff's tort-claims are barred.[8]

It is true that, "When a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable <u>for work performed in accordance with those plans and specifications</u>."  <u>Vanchieri v. New Jersey Sports and Exposition Authority</u>, 104 N.J. 80, 86, 514 A.2d 1323 (1986) (emphasis added).  In other words, private entities that "contract[] with a public body for the performance of public work, if not guilty of negligence or wilful tort, and if not employing ultrahazardous methods," are entitled to "share the immunity of the public body."  <u>Rodriguez v. New Jersey Sports</u>

---

[8] The COURT notes the irony of this position.  Defendant CMS has often argued before this COURT, as it does in this case, that its alleged misconduct was not pursuant to a government "custom or policy."  (Def.'s Br. 9-10.)  <u>See also, e.g.</u>, <u>Barnes v. Trenton State Prison Medical Dept.</u>, No. 06-5703, 2009 WL 113446, *3 (D.N.J. Jan. 14, 2009); <u>Thomas v. Correctional Medical Services, Inc.</u>, No. 04-3358, 2009 WL 737105, *10 (D.N.J. Mar. 17, 2009).  Here, however, Defendant CMS seems simultaneously to argue exactly the opposite position -- that is, it should be immune because the very conduct about which Plaintiff complains is the conduct it was hired by the State to perform.  If this position were correct, it would seem that the relevant conduct would quite clearly have been pursuant to a government "custom or policy."  <u>See</u> <u>Natale</u>, 318 F.3d at 584 (holding that § 1983 liability may exist when the act complained of implements a policy).

& Exposition Authority, 193 N.J. Super. 39, 45, 472 A.2d 146 (1983) (citation omitted).

Importantly, this "derivative immunity defense," as it is called, "allows the contractor to 'share' the government's immunity from suit [only] when the contractor, in performing a government contract, is not at fault."  Comment, The Government Immunity Defense: An Overview, 27 How. L.J. 275, 275 (1984) (emphasis in original) (cited approvingly in Vanchieri, 104 N.J. at 86).  The defense "does not protect the contractor who negligently performs the government's orders."  Id.

Thus, the Tort Claims Act does not shield Defendant CMS from liability here.  Plaintiff does not seek to recover damages for Defendant CMS's faithful performance of a public function; rather, Plaintiff seeks to recover for Defendant CMS's negligence in failing to perform the function for which it was hired, namely, providing proper medical care for inmates.  See Vanchieri, 104 N.J. at 87-88 (holding that a private entity's "derivative immunity" applies only when the entity has not deviated from the specifications of the task for which it was contracted).  Thus, as Plaintiff seeks to recover for the negligence of Defendant CMS, the derivative immunity defense does not apply here.

**Conclusion**

Accordingly, for the reasons stated herein, the COURT denies the motion to dismiss. An appropriate ORDER will issue this date.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: May 4, 2009